IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLARE DOLL CHASE,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>CEDAR CITY CORPORATION, et al.,<br><br>　　　　　　　　Defendants. | ORDER & MEMORANDUM DECISION<br><br><br><br>Case No. 2:05 CV 293 |

　　　　Plaintiff Clare Doll Chase was arrested for disorderly conduct and interfering with an arresting officer after she challenged the right of cable workers to be in her backyard. Ms. Chase filed this lawsuit approximately two years later, alleging that she was discriminated against in violation of the Americans with Disabilities Act, was subjected to excessive force, and was illegally arrested. Ms. Chase also alleged a cause of action for trespass, challenging the right of the cable company workers to be in her backyard the day the altercation took place.

　　　　The defendants in this suit include Cedar City, Utah, Cedar City Police Chief Ben Allinson, and Officer Allen Harwood (collectively "Cedar City"). Ms. Chase also named the cable workers themselves as defendants, as well as multiple communications companies. Ms. Chase claims that those companies are responsible for the alleged trespass of the cable workers under the doctrine of respondeat superior. Now before the court is Cedar City's Motion for Summary Judgment and Defendants Southwestern Communications, Inc. and TVS Systems, Inc.'s Motion for Judgment on the Pleadings.

　　　　Cedar City, in its motion, argues that it has not violated any laws nor deprived Ms. Chase

of her constitutional rights. Accordingly, Cedar City asserts that it is entitled to summary judgment on all of Ms. Chase's claims.[1] But the lack of discovery in this matter, coupled with the reality that the parties dispute the core facts that form the basis for Ms. Chase's claims, precludes the entry of summary judgment at this time.

Southwestern and TVS, in their motion for judgment on the pleadings, assert that the allegations in Ms. Chase's complaint are insufficient to state a claim of trespass against them and that dismissal of that claim is therefore appropriate. During oral argument, counsel for Ms. Chase conceded that the complaint fails to sufficiently allege a connection between the cable workers and Southwestern and TVS, a deficiency that forecloses Ms. Chase's ability to recover under the doctrine of respondeat superior. Accordingly, Ms. Chase's trespass claim against Southwestern and TVS is dismissed without prejudice.

## Background

In support of its motion for summary judgment, Cedar City submitted the affidavits of the two officers that were involved in Ms. Chase's arrest and an affidavit from the chief of the Cedar City Police Department, Chief Allinson. In opposition, Ms. Chase submitted her own affidavit as well as an affidavit from her sister. The parties have filed evidentiary challenges to the materials submitted by each other. Accordingly, before detailing the facts giving rise to this lawsuit, it is necessary to first determine what evidence is properly before the court.

**I. Motions to Strike**

*A. Officer Harwood's Police Report*

Ms. Chase claims that the court should disregard a police report attached to Officer

---

[1] The court previously dismissed Ms. Chase's state claims of malicious prosecution, intentional infliction of emotional distress, and trespass against Cedar City, holding that those claims were barred by governmental immunity. (See Order & Memo. Decision 3 (dkt. #15).)

Harwood's affidavit on hearsay grounds. Ms. Chase is correct that police reports are often excluded from the evidentiary record. See Fed. R. Evid. 803, Comment c ("Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer."). But it appears that the vast majority of the challenged police report contains the firsthand observations of Officer Harwood, which are admissible. See id.; see also United States b. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not.") (cited with approval in Walker v. Oklahoma City, 203 F.3d 837 (10th Cir. 2000), available at No. 98-6457, 2000 WL 135166, at *8 (10th Cir. Feb. 7, 2000)). Accordingly, it is appropriate to rely on the firsthand observations documented by Officer Harwood in his police report as necessary to provide context for the statements made by Officer Harwood in his affidavit. Further, the court's resolution of Cedar City's summary judgment motion is not dependent upon any hearsay statements contained in Officer Harwood's police report. And, therefore, Ms. Chase's motion to strike hearsay statements from the record is moot.

B. *Affidavits of Ms. Chase and Anne Tooman*

Cedar City moves to strike the affidavit of Ms. Chase's sister, Anne Tooman, in its entirety, arguing that the affidavit is irrelevant because it is confined to events for which Ms. Chase is not seeking recovery. Cedar City also moves to strike portions of Ms. Chase's affidavit, claiming that many of Ms. Chase's statements are conclusory and irrelevant. A review of Ms. Tooman's affidavit shows that it contains no material information that differs from that offered in Ms. Chase's affidavit. Accordingly, the court is able to rely solely on Ms. Chase's affidavit when ruling on Cedar City's summary judgment motion. Because the court has no need to

consider Ms. Tooman's affidavit, the motion to strike that affidavit is moot.

Additionally, although portions of Ms. Chase's affidavit are objectionable, the majority of her affidavit is sound and the court is able to identify and disregard conclusory legal statements. Cedar City also challenges portions of Ms. Chase's affidavit on relevancy grounds. But because the conclusion of the court is not affected by the presence of the statements challenged by Cedar City as irrelevant, Cedar City's motion to strike those statements is moot.

## II. Factual Background

Officer Harwood, in his sworn affidavit, states that he was at Ms. Chase's house on the day the events underlying this lawsuit occurred to ensure that Raul Torres and Mr. Torres's coworker, Ernesto Vargas, were able to finish a task within a utility easement located in Ms. Chase's backyard. The parties' testimony diverges significantly concerning the details of what happened at Ms. Chase's home, but it is undisputed that Ms. Chase confronted the men in her backyard, questioning their right to be on her property.

Officer Harwood maintains that Ms. Chase ran toward the workers and that he was forced to physically restrain her by grabbing her arm and placing her in a "twist lock." Officer Harwood states that he spoke with Ms. Chase several times throughout the encounter and informed her that Mr. Torres and Mr. Vargas were performing work within a utility easement and therefore had a right to be on the property. Officer Harwood claims that he asked Ms. Chase to return to her home to avoid possible arrest. Despite that warning, Officer Harwood asserts that Ms. Chase continued to accost the workers and also continued her attempts to get past him, apparently to physically confront the workers. Officer Harwood claims that he ultimately had no choice but to arrest her.

Ms. Chase's testimony paints a different picture. According to Ms. Chase, some time

before her arrest, a cable company representative informed her that a cable construction project was planned for her neighborhood. Nevertheless, the representative indicated that cable workers would not need access to her property. Accordingly, when she saw the workers in her backyard, she went outside and told Officer Harwood to remove the workers from her property. Ms. Chase asserts that she was fully cooperative and compliant with Officer Harwood throughout the encounter and that she never tried to get past Officer Harwood in an attempt to reach the cable workers. She also claims, contrary to the account of Officer Harwood, that she was never informed that she should return to the house or face possible arrest.

     Despite the strikingly different versions of events put forward by the parties, it is undisputed that Officer Harwood used physical force against Ms. Chase during the confrontation. Officer Harwood admits that he grabbed Ms. Chase's arm, used a twist lock, and later placed her in handcuffs and put her in the back of his patrol car. Once in the patrol car, Ms. Chase expressed concern about two children that were in her home and requested that Officer Harwood ensure that the children were looked after. The parties disagree about the length of time the children were left alone. Ms. Chase states that Officer Harwood refused to take any action to address the situation and that the children were unattended for approximately forty-five minutes to an hour. Officer Harwood states that Officer Travis Carter arrived on the scene about two minutes after Ms. Chase's arrest and that when Officer Carter approached the house, Ms. Chase's sister was already there, caring for the children.

     At the time these events unfolded, Ms. Chase's police file contained an "alert code" indicating that she was a mental patient. According to Officer Harwood's sworn testimony, he was unaware of the alert code when he arrested Ms. Chase. There is no evidence that indicates how or when the mental patient designation was made. The classification has since been

changed to indicate that Ms. Chase exhibits erratic behavior.

## Analysis

**I. Claims Against Cedar City**

Ms. Chase claims that because Cedar City misclassified her as a mental patient, she was discriminated against in violation of the ADA. She also asserts that Cedar City violated her constitutional rights, contending that she was arrested without probable cause and subjected to excessive force. Although Ms. Chase asserts that Cedar City's actions deprived her of her Fourth and Fourteenth Amendment rights, the Fourth Amendment alone governs the analysis of her claims. See Taylor v. Meacham, 82 F.3d 1556, 1560 (10th Cir. 1996) ("In Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), a plurality of the Supreme Court held that the Fourth Amendment governed 'pretrial deprivations of liberty.' Id. at ----, 114 S.Ct. at 813. Fourteenth Amendment substantive due process standards have no applicability."); see also Graham v. Connor, 490 U.S. 386, 396 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."). Accordingly, the court will only consider the Fourth Amendment when analyzing Ms. Chase's constitutional claims.

*A. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

### B. ADA Claim

Ms. Chase claims that she was discriminated against because Officer Harwood treated her differently than he would another individual based on the presence of an alert code that identified Ms. Chase as a mental patient. Ms. Chase argues that she is protect by the ADA because that act protects not only impaired individuals, but also individuals that are considered to have an impairment. See 28 C.F.R. § 35.104(4) ("The phrase regarded as having an impairment means . . . (iii) Has none of the impairments defined in paragraph (1) of this definition but is treated by a public entity as having such an impairment."). According to Ms. Chase, the mental patient alert code indicates that Cedar City treated her as an individual with an impairment. (See Plf.'s Memo. of Points & Auths. In Opp'n to Cedar City's Mot. for Summ. J. 14 (dkt. # 47) ("Since Cedar City's own documents have labeled Plaintiff as a mental patient, the natural and logical inference is that she is being treated as having . . . [an] impairment by the public entity.").)

Although less than clear, it appears that Ms. Chase bases her ADA claim on 28 C.F.R. § 35.130(a). That regulation states that an individual covered by the ADA cannot be denied the "benefits of the services, programs or activities of [a] public entity" or otherwise "be subjected to discrimination by any public entity." Id. Cedar City contends that summary judgment on Ms. Chase's ADA claim is appropriate because, although Ms. Chase "alleges that the police department provides 'services' and that she was discriminated against in the provision of those services[,] [s]he fails . . . to identify with any specificity the services or the discrimination." (Memo. in Supp. of Cedar City's Mot. for Summ. J. 15 (dkt. #27).)

A review of Ms. Chase's complaint and her memorandum opposing summary judgment indicates that Ms. Chase believes the existence of the mental patient alert code motivated Officer Harwood's actions leading up to and including her arrest.  (See, e.g., Complaint ¶ 47 (dkt. #1) ("Upon information and belief, one of the reasons the officers overreacted in their . . . dealings with Plaintiff was the police department's misinformation and mislabeling of Plaintiff as a mental patient prior to their arriving on her property."); id. ¶ 52 ("Defendants cannot deny proper services to Plaintiff on the basis of fear or misinformation about the disability."); Plf.'s Memo. of Points & Auths. In Opp'n to Cedar City's Mot. for Summ. J. 15 (dkt. #47) ("Plaintiff does not believe the actions of Officer Harwood were reasonable or logical.  Once she became alerted to [the existence of the mental patient alert code], she believed that unusual code was consistent with the officers' treatment of her and with the officer having advanced notice of such information . . . .").)

Ms. Chase states that Cedar City indicated in its interrogatory answers that if Officer Harwood entered Ms. Chase's name on his computer before arriving at her address, the mental patient alert code would have been displayed.  But Officer Harwood asserts in his sworn affidavit that he was not aware of the alert code and that the alert code did not influence any of the decisions he made before arresting Ms. Chase.

"[S]ummary judgment should not be based on the deposition or affidavit of an interested party . . . as to facts known only to him" because in such a situation "demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." Madison v. Deseret Livestock Co., 574 F.2d 1027, 1037 (10th Cir. 1978) (citing Nat'l Aviation Underwriter's, Inc. v. Altus Flying Serv., Inc., 555 F.2d 778, 784 (10th Cir. 1977)).  Further, "[u]nless the moving party can demonstrate his entitlement beyond a reasonable doubt, summary judgment must be

denied." Conway v. Smith, 853 F.2d 789, 792 n.4 (10th Cir. 1988) (citing Norton v. Liddel, 620 F.2d 1375, 1381 (10th Cir. 1980)).

As the record now stands, the court is unable to determine whether Ms. Chase's ADA claim has merit. Cedar City asserts that it has no information regarding the entry of the mental patient alert code and it has not presented any policy that was in effect before Ms. Chase's arrest that addresses the use of alert codes. As the moving party, it is Cedar City's burden to establish beyond a reasonable doubt that it is entitled to summary judgment. The evidence Cedar City provides is insufficient to meet that heavy burden. Accordingly, Cedar City's motion for summary judgment on Ms. Chase's ADA claim must be denied at this time.

*C. Ms. Chase's Constitutional Claims*

Ms. Chase asserts that Cedar City violated her constitutional rights by wrongfully arresting her and subjecting her to excessive force. The parties' briefs also contain argument addressing malicious prosecution, but, as Cedar City correctly notes, it is uncertain whether Ms. Chase is pursuing a malicious prosecution claim under § 1983.

In response to Ms. Chase's constitutional claims, Cedar City argues that it is entitled to summary judgment on qualified immunity grounds. The qualified immunity doctrine "protects public officials performing discretionary functions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Johnson v. Martin, 195 F.3d 1208, 1216 (10th Cir. 1999) (internal citations omitted). When a claim of qualified immunity is raised in the context of a motion for summary judgment, the court, viewing the evidence in a light most favorable to the nonmoving party, must first determine whether the plaintiff has sufficiently asserted the violation of a constitutional right. Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005). Then, if the plaintiff

has done so, the court must determine whether the asserted right was clearly established at the time the defendant acted. Id. at 841-42. "When evaluating a qualified immunity defense, after identifying the constitutional right allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place." Pierce v. Gilchrist, 359 F.3d 1279, 1297 (10th Cir. 2004) (emphasis added). "Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional." Mimics, 394 F.3d at 842 (quoting Hope v. Pelzer, 536 U.S. 730, 739-40 (2002)). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003).

To determine whether a right is clearly established, the Supreme Court recently noted, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Hope, 536 U.S. at 739. Put another way, the inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." Pierce, 359 F.3d at 1298. Importantly, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 343 (1986) (citing Harlow v. Fitzgerald, 475 U.S. 800 (1982)). A showing of negligence, even if it is gross negligence, is not sufficient to establish liability under 42 U.S.C. § 1983. Johnson, 195 F.3d at 1219. Even on summary judgment, Ms. Chase bears the burden of establishing that the Cedar City violated a clearly established right. See Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992) ("A defendant

government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff.").

     1.     *The Arrest*

"The rule that arrests must be supported by a warrant or probable cause is well established." <u>Fuerschbach v. Southwest Airlines Co.</u>, 439 F.3d 1197, 1205 (10th Cir. 2006) (citing <u>Dunway v. New York</u>, 442 U.S. 200, 212 (1979)). Here, the parties dispute whether Ms. Chase behaved such that Officer Harwood possessed probable cause to arrest her.

Officer Harwood insists that he arrested Ms. Chase for disorderly conduct and interfering with an arresting officer after she verbally accosted the cable workers, and made multiple attempts to reach the workers--presumably an action that would have transformed the encounter into a physical confrontation but for Officer Harwood's presence. But Ms. Chase claims that Officer Harwood grabbed her, forcibly handcuffed her, and arrested her even though she was fully cooperative, compliant, and calm throughout the encounter.

When the evidence is viewed in the light most favorable to Ms. Chase, it is apparent that she has successfully submitted evidence supporting the conclusion that she was arrested without probable cause. It is also beyond dispute that her right to be free from an arrest unsupported by probable cause or a warrant was clearly established at the time of her arrest. <u>See</u> <u>id.</u> Because the parties dispute whether Ms. Chase's behavior was severe enough to justify her arrest, it is inappropriate to enter summary judgment on this issue.

     *2. Excessive Force*

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham</u>, 490 U.S. at 396. Here, Ms. Chase claims that Officer Harwood used excessive force in effecting her arrest because

11

her arrest was unlawful and therefore Officer Harwood was not justified in using any force against her.  (See, e.g., Plf.'s Memo. of Points & Auths. In Opp'n to Cedar City's Mot. for Summ. J. 19 (dkt. #47) ("When the three-part inquiry [applicable to excessive force claims] is applied to the circumstances of Plaintiff's arrest, it becomes clear the arrest was unreasonable and summary judgment is inappropriate." (emphasis added)).)

Officer Harwood states that he grabbed Ms. Chase's arm and put her in a "twist lock"[2] after she attempted to reach the cable workers.  A short time later, he placed Ms. Chase in handcuffs and put her in the back of his patrol car.  It is evident that the very actions that potentially support Officer Harwood's arrest of Ms. Chase also support the use of some degree of force to effect that arrest.  But before it is possible to evaluate the appropriateness of the force used by Officer Harwood, it is necessary to determine the facts that supposedly made the application of force necessary.  As discussed, those facts are disputed.  Given the current state of the record, Cedar City's motion for summary judgment on Ms. Chase's claim of excessive force must be denied.

    3. *Malicious Prosecution*

In the Tenth Circuit, state law provides the starting point for a § 1983 claim of malicious prosecution.  Erikson v. Pawnee County Bd. of County Com'nrs, 263 F.3d 1151, 1154 (10th Cir. 2001).  Under Utah law, there are four elements to a malicious prosecution claim, all of which must be proven: "(1) A criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the accused; (3) absence of probable cause for the proceeding; (4) 'malice,' or a primary purpose other than that of bringing an offender to justice."  See  Callioux v. Progressive Ins. Co., 745 P.2d 838, 843 (Utah Ct. App. 1987).

---

[2]There is no evidence in the record that identifies what a "twist lock" is or addresses the commonality of its use by law enforcement officers.

"Although the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation." Pierce v. Gilchrist, 359 F.3d 1279, 1289 (10th Cir. 2004); see id. at 1290 (rejecting the conclusion "that a plaintiff does not state a claim actionable under § 1983 unless he satisfies the requirements of an analogous common law tort").

Cedar City primarily attacks Ms. Chase's malicious prosecution claim by asserting that the arrest of Ms. Chase was supported by probable cause, which is fatal to a state law allegation of malicious prosecution. But, as noted, the Tenth Circuit has indicated that, in certain circumstances, a plaintiff may be able to pursue a § 1983 claim of malicious prosecution even without satisfying the elements of the analogous state law malicious prosecution claim. See id. at 1290. In any event, the existence of probable cause is directly tied to the disputed facts surrounding Ms. Chase's arrest and even if Cedar City's understanding of § 1983 malicious prosecution claims was correct, it would not necessarily be entitled to summary judgment on the ground that the prosecution was supported by probable cause.

But Ms. Chase's malicious prosecution claim suffers from a greater defect than that identified by Cedar City: she has failed to allege that her prosecution resulted in a violation of her constitutional rights. Ms. Chase's complaint contains a cause of action for malicious prosecution separate and apart from her § 1983 claim. The allegations underlying that malicious prosecution claim address only the elements of a state law malicious prosecution cause of action. The court previously dismissed that claim on governmental immunity grounds. (See Order & Memo. Decision 3 (dkt. #15) ("Defendants are immune from suit on Ms. Chase's claims for intentional infliction of emotional distress, malicious prosecution, and trespass." (emphasis added)).)

To adequately state a claim for § 1983 malicious prosecution, Ms. Chase must include some allegation that she suffered deprivation of a constitutional right as a result of the prosecution.  See id. at 1289 ("Although the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation." (emphasis added)).

Ms. Chase's complaint contains no allegations that her prosecution itself violated her constitutional rights.  To the extent Ms. Chase is relying on her separately pleaded malicious prosecution claim as a sufficiently stated § 1983 malicious prosecution claim, the allegations are insufficient because they are confined to the elements of a state law cause of action and do not allege a constitutional violation.  And, if Ms. Chase is relying on the allegations contained in her § 1983 cause of action, the complaint's allegations are still insufficient because those allegations are confined to events directly involving her arrest and contain no mention of her prosecution.

In short, although Ms. Chase did plead a state cause of action for malicious prosecution, that claim has already been dismissed.  Further, Ms. Chase's complaint does not adequately allege a § 1983 malicious prosecution claim.  Accordingly, absent the submission of an amended complaint, Cedar City cannot be held liable for malicious prosecution under § 1983.

*4. Liability of Chief Allinson and Cedar City Corporation*

Cedar City alleges that Ms. Chase has produced no evidence that could potentially result in the liability of either Chief Allinson or Cedar City Corporation.  But it is apparent from the record that virtually no discovery has occurred regarding the potential liability of those parties.[3]

---

[3] After receiving interrogatory responses, Ms. Chase filed a motion to compel the production of more responsive information relating to police department's use of alert codes.  That motion was denied by United States Magistrate Judge Brooke C. Wells shortly before the court's hearing on Cedar City's motion for summary judgment.  It is unclear from the record whether discovery has been conducted on issues other than the presence of the alert code.

In fact, although Ms. Chase did not file a separate motion seeking leave to conduct additional discovery, counsel for Ms. Chase did submit an affidavit referencing rule 56(f) of the Federal Rules of Civil Procedure and Ms. Chase argues in her memorandum opposing summary judgment that more discovery in this matter is necessary.  Under proper circumstances, rule 56(f) allows for a party to pursue additional discovery that may aid the party's attempt to oppose a motion for summary judgment.  Fed. R. Civ. P. 56(f).

"[D]iscovery is strongly favored before summary judgment is granted . . . ."  Bryant v. O'Connor, 848 F.2d 1064, 1068 (10th Cir. 1988).  The record now before the court is lacking in many respects.  The only relevant evidence concerning Ms. Chase's claims against Chief Allinson and Cedar City Corporation is confined to Chief Allinson's three-page affidavit.  Neither Chief Allinson nor Officer Harwood have been deposed and Ms. Chase may yet be able to discover additional evidence relevant to her claims.  Given the uncertain state of the record, granting Chief Allinson and Cedar City Corporation summary judgment on Ms. Chase's claims is inappropriate at this time.

**II. Insufficiency of Trespass Claim**

Defendants Southwestern Communications, Inc. and TVS Systems, Inc. have filed a motion seeking dismissal of the trespass claim that Ms. Chase asserts against them.  In response to that motion, Ms. Chase made no attempt to defend the sufficiency of her complaint, but rather moved for leave to file an amended complaint.  That motion was denied by United States Magistrate Judge Brooke C. Wells.  (See Order Denying Mot. for Leave to Amend 4 (dkt. #73).)

During oral argument before this court on Southwestern and TVS's motion for judgment on the pleadings, counsel for Ms. Chase conceded that the complaint originally filed in this is matter fails to adequately state a claim of trespass against Southwestern and TVS.  As noted in

the memoranda filed by Southwestern and TVS, the original complaint fails to allege facts sufficiently linking the alleged trespassers to Southwestern and TVS, a deficiency that forecloses Ms. Chase's ability to recover under the doctrine of respondeat superior.

Given that the original complaint still governs this lawsuit, the court dismisses Ms. Chase's trespass claim against Southwestern and TVS without prejudice.  Should Ms. Chase seek to reassert her trespass claim against Southwestern and TVS, the court will, at that time, address the propriety of her intention.

## **Conclusion**

The critical facts underpinning this entire lawsuit are either incomplete or in dispute.  All of Ms. Chase's claims implicate, in some fashion, the events that unfolded in her backyard on the day of her arrest.  The parties present diametrically opposed versions of those events.  Given the parties' dispute and the lack of evidence concerning the police department's use of the alert code system, summary judgment on Ms. Chase's claims is inappropriate at this time.  The court notes, however, that Ms. Chase's complaint does not state a claim of malicious prosecution that can be redressed by § 1983.

Also, as conceded by Ms. Chase's counsel, the complaint that currently governs this dispute fails to adequately state a claim of trespass against Southwestern and TVN.  Therefore, that claim must be dismissed.

Accordingly, Cedar City's Motion for Summary Judgment (dkt. #26) is DENIED.  Southwestern and TVN's Motion for Judgment on the Pleadings (dkt. #38)  is GRANTED, provided that the trespass cause of action is dismissed without prejudice.  Plaintiff's Motion to Strike Exhibit A, Attached to Affidavit of Allen Harwood (dkt. #48) is DENIED as moot.  Cedar

City's Motion to Strike Portions of the Affidavits of Clare Doll Chase and Anne Tooman (dkt. #62) is DENIED as moot.

SO ORDERED this 12th day of September, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge